## RELEASE AND SETTLEMENT AGREEMENT

This release and settlement agreement ("Agreement") is entered into as of the date last entered on the execution pages by Communities United, Community Renewal Society, Next Steps NFP, ONE Northside, and the ACLU of Illinois (collectively, "Plaintiffs") and the City of Chicago (the "City"). The Plaintiffs and the City are each referred to as a "Party" and are collectively referred to as the "Parties" in and to this Agreement.

**WHEREAS**, on August 29, 2017, the State of Illinois, through the Office of the Attorney General of the State of Illinois ("OAG"), filed a complaint against the City in the United States District Court for the Northern District of Illinois, Eastern Division, known as *State of Illinois v. City of Chicago*, Case No. 17-cv-6260 ("*Illinois v. Chicago*");

**WHEREAS**, on October 4, 2017, Plaintiffs filed a complaint against the City in the United States District Court for the Northern District of Illinois, Eastern Division, known as *Communities United, et al. v. City of Chicago*, Case No. 17-cv-7151 (the "Lawsuit"); Plaintiffs sought declaratory and injunctive relief to redress alleged violations of Plaintiffs' civil and constitutional rights pursuant to 42 U.S.C. § 1983; the U.S. Constitution; the Illinois Constitution; the Americans with Disabilities Act, 42 U.S.C. § 12132; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; and the Illinois Civil Rights Act of 2003, 740 ILCS 23/5; and on November 28, 2017, Plaintiffs filed an amended complaint in the Lawsuit;

**WHEREAS**, the City denies any wrongdoing regarding the allegations in the Lawsuit;

**WHEREAS**, on March 20, 2018, Plaintiffs, the City, OAG, and additional signatories entered into an agreement (Memorandum of Agreement, or, the "MOA") (Exhibit A) in light of their shared mutual interests in ensuring that police services in Chicago are delivered in a manner that is consistent with federal and state law, and in strengthening initiatives to ensure that encounters between police and African American and Latino residents and persons with disabilities do not result in the use of unnecessary or excessive force;

**WHEREAS**, on January 31, 2019, Judge Robert M. Dow. Jr. entered an order approving a consent decree (the "Consent Decree") that addresses the claims asserted by the OAG in *Illinois v. Chicago*; paragraphs 669 and 709 of the Consent Decree describe Plaintiffs' rights relating to the enforcement of the Consent Decree; and the Consent Decree went into effect on March 1, 2019;

**WHEREAS**, the Parties have agreed to avoid the burden, inconvenience, and expense of protracted litigation of the Lawsuit; and

**NOW THEREFORE**, for and in consideration of the promises and conditions set forth below, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. The foregoing recitals are incorporated and are a part of the Agreement.

1

**Alternative Responses to Individuals Experiencing Acute Behavioral Crises**

2. The City has worked with certain third party organizations to develop strategies to identify high-service utilizers who experience acute behavioral or mental health crises and are frequently the subject of or a participant in requests for emergency services from the City. In cooperation with these third party organizations, the City attempts to refer these individuals to preventative and long-term treatment offered by third party service providers. This project is currently referred to as the Mental Health Emergency Alternative Response and Treatment Project (hereinafter "mHeart Project"), though it may ultimately operate under a different title. The mHeart Project was submitted to and approved by the Institutional Review Board at the University of Chicago. The primary objectives of the mHeart Project are to proactively identify and refer individuals in need of care, treatment and/or services (including preventative services) to appropriate service providers, including community-based service providers, while reducing the burdens and costs arising from these high-service utilizers of the City's emergency services.

3. The City has a crisis intervention response advisory committee ("Advisory Committee"), pursuant to paragraph 128 of the Consent Decree. Requirements for its membership are enumerated in paragraph 132 of the Consent Decree. The City agrees to provide to the Plaintiffs and public notice in the event that the Consent Decree is modified with respect to these terms.

4. The City agrees that the Advisory Committee will analyze and provide written recommendations to the City regarding how the operations of the mHeart Project can be transitioned to the City. The Advisory Committee will provide these recommendations contemporaneously with the recommendations that the Advisory Committee is to provide pursuant to paragraph 131 of the Consent Decree. Plaintiffs will also receive these written recommendations regarding the mHeart Project.

5. Upon a determination by the City, based on the recommendations and advice of the Advisory Committee, that the mHeart Project can be transitioned to the City, the City agrees to transition the mHeart Project to the City within eighteen (18) months of the receipt of these written recommendations from the Advisory Committee.

6. It is anticipated that the mHeart Project will be managed by the City of Chicago Department of Public Health. The City agrees that at no time will the implementation or management of the mHeart Project be under the authority of the Chicago Police Department. The City agrees that law enforcement will not be involved in outreach to potential candidates for mHeart consistent with the City's goal of developing non-criminal justice responses to individuals in crisis. The City also agrees that candidates who are offered the opportunity to participate in the mHeart program are under no obligation to participate no adverse inference or consequence will result from their declining to participate; and candidates will have the opportunity to opt out of future contact by the program.

7. If the mHeart Project can be transitioned to the City, the City agrees to operate the mHeart Project for a minimum of twelve (12) months. The City further agrees that the Advisory Committee will provide a written report to the City and Plaintiffs after the mHeart Project has been operated by the City for twelve (12) months, to determine if the City is effectively achieving the

objectives of the mHeart Project and, if not, to identify barriers to achieving those objectives. When deciding whether to continue the program, the Advisory Committee will consider whether the mHeart Project is primarily connecting individuals to community-based service providers.

8. In the event that, after the mHeart Project is operated for a term of twelve (12) months, the City determines that the mHeart Project is not meeting its primary objectives, the City may elect to cease the operation of the mHeart Project. The cessation or other material modification of the mHeart Project after the initial twelve-month period shall not constitute a breach of this Agreement.

9. Any data or information collected from the mHeart Project will be used solely for purposes of the implementation, evaluation, modification, and improvement of the mHeart Project. No personal identifying information or data collected from the mHeart Project will be shared with or accessible to law enforcement agencies. The City will not use data collected or created by the mHeart Project for any other purpose without prior written notice to Plaintiffs.

**Consent Decree Advisory Committee**

10. Upon execution of this Agreement, the City will provide four (4) voting seats, constituting full membership on the Advisory Committee, to Plaintiffs. These four (4) seats will each have one vote, with the same rights and restrictions on participation and voting as the other members of the Advisory Committee.

11. Plaintiffs are deemed to have participated in the April 2019 Advisory Committee meeting for purposes of the requirements of Advisory Committee membership.

12. Plaintiffs will ensure that, at each meeting that they attend, their attendees include a person with a lived experience with a behavioral or mental health crisis or an individual from an advocacy group that advocates for consumers of behavioral and mental health services. Nothing in this Agreement shall be construed to prevent the Mayor's Office from inviting additional members to join the Advisory Committee, such as individuals who have personally experienced a behavioral or mental health crisis or other advocacy groups for consumers of behavioral and mental health services.

13. If Plaintiffs' Advisory Committee representatives fail to fulfill the obligations required of them by the Advisory Committee and its by-laws, Plaintiffs' representatives are subject to removal under the same guidelines and procedures applicable to other members of the Advisory Committee, and their removal from the Advisory Committee due to their failure to fulfill those obligations shall not constitute a breach of this Agreement. The City will provide Plaintiffs with fourteen (14) days' written notice prior to the removal of Plaintiffs' representatives from the Advisory Committee.

**Other Terms**

14. The Parties acknowledge that each are in compliance with the MOA, and waive existing claims, if any, for breach of the MOA.

15. This Agreement does not in any way limit Plaintiffs' rights to enforce the Consent Decree as set forth by the terms of the MOA and the Consent Decree.

16. The Parties agree that nothing contained in this Agreement shall constitute or be deemed an admission of any fault, liability, or wrongdoing of any kind whatsoever on the part of any Party or the Party's future, current, or former officers, agents, and employees. The Parties further acknowledge that this Agreement shall not serve as evidence of the validity or invalidity of any claims asserted in the Lawsuit.

17. In consideration of the hereinafter-indicated settlement entered pursuant to this Agreement, Plaintiffs agree that, within ten (10) business days of the full execution of this Agreement, they will direct their counsel in the Lawsuit to file a Stipulation and Agreed Order of Dismissal with the Court, asking the Court to dismiss the Lawsuit without prejudice immediately and to retain jurisdiction over the case and the Parties for the limited purpose of enforcing the terms of the Agreement. The Parties will further ask the Court to order that the dismissal without prejudice automatically convert to a dismissal with prejudice on August 21, 2019, unless prior to that date a Party files a motion to enforce the Agreement. A copy of this Agreement will be filed with the Court. Each Party will bear its own costs and attorneys' fees.

18. Plaintiffs, after receiving the advice of counsel, understand and agree that, in consideration of the undertakings in this Agreement, this is a final and total settlement of the Lawsuit, and agree to dismiss the Lawsuit. The Agreement is entered into solely for the benefit of the Parties and their successors and assigns, and is not intended to create, nor shall it be construed to create, any rights for the benefit of any other person or organization, or to be enforceable by any other person or organization, directly or derivatively in the name of any of the Parties.

19. No Party shall assign, in whole or in part, this Agreement or any of their respective rights or obligations under this Agreement, without the prior written approval of all other Parties. Such approval shall not be unreasonably withheld.

20. The Parties agree that this Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

21. This Agreement constitutes the entire agreement of the Parties with regard to the settlement of the Lawsuit. Plaintiffs cannot and do not waive claims that have been, could have been, or will be brought by individual members of Plaintiff organizations, nor do Plaintiffs waive their own rights to file future claims against the City, except for those incidents expressly alleged in this Lawsuit. In any such future action, Plaintiffs would not be precluded from referring to historical patterns and practices of violations alleged in the current action. There are no other understandings or agreements between or among any of the Parties with respect thereto. This Agreement may not be modified, amended, waived, or revoked orally, but only by a writing signed by all Parties or their attorneys.

22. This Agreement may be executed in identical original counterparts, with each counterpart constituting the entire Agreement. A facsimile or electronic signature shall be considered the equivalent of an original signature.

23. The persons signing the Agreement below represent and warrant that he or she is authorized to sign on behalf of the Party for which he or she is signing and that the Agreement as signed is binding on that Party.

*For Plaintiffs:*

_____ Dated: 5/17/19
Karen Sheley
Kathryn Hunt Muse
Counsel for
**COMMUNITIES UNITED, COMMUNITY RENEWAL SOCIETY, NEXT STEPS NFP, ONE NORTHSIDE, AND ACLU OF ILLINOIS**
Roger Baldwin Foundation of ACLU, Inc.
150 N. Michigan Ave., Ste. 600
Chicago, IL 60601
ksheley@aclu-il.org
kmuse@aclu-il.org

*For Defendant:*

_____ Dated: May 17, 2019
Allan T. Slagel
Elizabeth E. Babbitt
Counsel for
**CITY OF CHICAGO**
Taft Stettinius & Hollister LLP
111 E. Wacker Drive, Ste. 2800
Chicago, IL 60601
aslagel@taftlaw.com
ebabbitt@taftlaw.com

5

# Exhibit A

# MEMORANDUM OF AGREEMENT

# BETWEEN

# THE OFFICE OF THE ILLINOIS ATTORNEY GENERAL

# AND

# THE CITY OF CHICAGO

# AND

# *CAMPBELL v. CITY OF CHICAGO* PLAINTIFFS AND *COMMUNITIES UNITED v. CITY OF CHICAGO* PLAINTIFFS

WHEREAS the purpose of this Memorandum of Agreement ("MOA" or "Agreement") is to establish a mechanism for meaningful community participation in the enforcement of any consent decree entered into by the Office of the Illinois Attorney General and the City of Chicago addressing and resolving the allegations in *State of Illinois v. City of Chicago*, N.D. Ill. Case No. 17-cv-6260 ("OAG Litigation");

WHEREAS the parties to this MOA are the State of Illinois through the Office of the Illinois Attorney General ("OAG"), the City of Chicago ("City"), the Plaintiffs in *Campbell v. City of Chicago*, N.D. Ill. Case No. 17-cv-4467 (the "*Campbell* Plaintiffs"),[1] and the Plaintiffs in *Communities United v. City of Chicago*, N.D. Ill. Case No. 17-cv-7151, (the "*Communities United* Plaintiffs") (collectively, the *Campbell* Plaintiffs and the *Communities United* Plaintiffs are the "Coalition Founders") (collectively, "the Parties"); and

WHEREAS the Parties share mutual interests in ensuring that police services in Chicago are delivered in a manner that is consistent with federal and state law, and in strengthening initiatives to ensure that encounters between police and African American and Latino residents

---

[1] For the purposes of this Agreement, the *Campbell* Plaintiffs consist of the following: Black Lives Matter Chicago, Blocks Together, Brighton Park Neighborhood Council, the NAACP, Network 49, the Women's All Point Bulletin, and the Chicago Urban League ("Organizational Plaintiffs").

and persons with disabilities do not result in the use of unnecessary or excessive force. The Parties hereby agree as follows:

1. The Parties acknowledge that the Coalition Founders have established a broad-based community coalition committed to monitoring, enforcing, and educating the community about the consent decree ("the Coalition"). The Coalition includes the plaintiffs in the *Campbell* and *Communities United* lawsuits. The Coalition Founders will make best efforts to ensure that the Coalition includes additional civil rights and community organizations in the City of Chicago with an expressed interest in police accountability.

2. The Parties acknowledge that the OAG and the City are in the process of negotiating a consent decree that is intended to address the following areas: (a) use of force; (b) training; (c) supervision and promotions; (d) accountability and oversight; (e) community policing and impartial policing; (f) crisis intervention; (g) officer assistance and support; (h) data management; and (i) independent monitor. In an effort to further opportunities for constructive dialogue, the Parties agree that no later than 60 days after the execution of this MOA, the Coalition Founders will provide to the OAG and to the City proposals of what should be contained in a consent decree. The OAG and the City agree to meaningfully review and consider the suggestions of the Coalition Founders.

3. The OAG and the City agree to meet with counsel for the Coalition Founders to discuss the Coalition Founders' proposed consent decree provisions, if any, as the consent decree is being drafted. To the extent the OAG or the City disagree with terms proposed by the Coalition Founders, the City or the OAG will, where feasible and appropriate, discuss with the Coalition Founders alternative terms for consideration. In the event the City or the OAG has a conceptual disagreement with a proposal from the Coalition Founders, the City or the OAG will

explain the basis of the disagreement. The Parties agree that these discussions and any documents or information exchanged by the Parties will be kept confidential unless otherwise agreed to by the Parties, and be governed by Federal Rule of Evidence 408. The terms of this paragraph shall survive the termination of this Agreement.

4. The City and the OAG acknowledge that they are in the process of engaging the community, including community members most affected by unnecessary or excessive force, via website, phone, and in-person meetings. Through these methods, the City and the OAG are soliciting feedback and input regarding the terms of a consent decree on police reform from Chicago community organizations, residents, and members of the Chicago Police Department. The City and the OAG agree to consider in good faith the ideas proposed through the community engagement process, and use best efforts to incorporate appropriate terms and conditions into the consent decree.

5. The Coalition Founders shall have an opportunity to make a presentation to the negotiating teams from the OAG and the City and explain how their experiences with police misconduct should inform changes in the policies and practices of the Chicago Police Department.

6. The City and the OAG shall provide the Coalition Founders with a full and complete version of the proposed draft consent decree as soon as feasible. The Coalition Founders will have a reasonable time to provide feedback to the OAG and the City on the terms contained in the proposed consent decree before the proposed consent decree is filed with the Court.

7. The Coalition Founders are the sole arbiters of the Coalition's objectives, composition and structure. All Parties acknowledge and understand that the composition of the

Coalition will likely change over time.

8. Within 60 days of the execution of this MOA, counsel for the Coalition Founders will provide the OAG and the City with a document that includes the following: (a) a list of the Coalition's members; (b) a description of the Coalition's objectives; (c) the Coalition's leadership structure; and (d) name and contact information for notice and communications with the Coalition. Should any of the items set forth in this Paragraph 8 change, counsel for the Coalition Founders will notify the OAG and the City within seven days of the change in writing.

9. The OAG and the City agree that the proposed draft consent decree will include terms that will require the Independent Monitor to participate in quarterly meetings with the Coalition, outside the presence of the City and the OAG, to discuss the City's compliance with the consent decree.

10. The OAG and the City agree that they will make a joint request to the Court for a Fairness Hearing on the Consent Decree. The OAG and the City agree that they will not object to the Coalition's standing to file with the Court any motions or filings relating to the adequacy or fairness of the proposed consent decree in conjunction with the Fairness Hearing.

11. The OAG and the City agree that they will not object to the Coalition's standing to file written comments with the Court regarding all reports filed by the Independent Monitor in *State of Illinois v. City of Chicago*, Case No. 17-cv-6260.

12. The OAG and the City will not object to the standing of the Coalition to file motions to enforce the consent decree if (a) the Coalition first presents its motion to enforce the consent decree to the OAG, the City, and the Independent Monitor for their consideration; and (b) the Coalition follows any procedural prerequisites to filing enforcement motions that the consent decree terms require of the OAG. In order to effectuate the terms of this MOA, the

OAG and the City agree that any proposed consent decree that either party submits to the Court shall contain the following terms (or substantially similar terms pre-approved by the Coalition Founders):

    a. Notwithstanding any other provision of this Consent Decree, the Consent Decree is enforceable by the Court upon a motion by the Coalition subject to the conditions in subparagraphs (a) through (b) herein. Prior to filing any enforcement motion the Coalition will (i) meet and confer in good faith with the Parties to attempt to resolve issues identified by the Coalition without the need for intervention by the Court and (ii) follow the prerequisites for filing enforcement motions required of the State set forth in Paragraphs [_____].

    b. The Coalition is defined as the plaintiff organizations in the *Campbell* lawsuit and the plaintiffs in the *Communities United* lawsuit (collectively "Coalition Founders"), as well as other civil rights and community organizations in the city of Chicago who are members of the Coalition. The Coalition's rights set forth in Paragraph (a) above shall not apply to any individual or organization that is not a member of the Coalition, including but not limited to individuals or organizations that were once members of the Coalition but subsequently left or were removed from the Coalition. The Coalition Founders are the sole arbiters of the Coalition's objectives, composition, and structure.

13. The OAG and the City agree that they will not include any term in the consent decree that either party proposes to the Court that purports to limit the powers or rights of the Coalition enumerated in Paragraph 12 above.

14. The Parties agree that the Coalition's rights set forth herein, and the OAG's and the City's obligations herein, shall not apply to any individual or organization that is not a member of the Coalition, including but not limited to individuals or organizations that were once members of the Coalition but subsequently left or were removed from the Coalition.

15. Within 14 days of the effective date of this Agreement, the *Campbell* Plaintiffs and the City agree to file a joint motion with the Court in *Campbell v. City of Chicago*, Case No. 17-cv-4467, seeking to stay that litigation as to the injunctive claims, the *Monell* claims, and the claims of the Organizational Plaintiffs. The claims of the individual *Campbell* Plaintiffs for

5

money damages shall proceed. The *Campbell* Plaintiffs further agree that they will not file any motion for intervention, consolidation, relatedness, reassignment, or joinder in the OAG Litigation unless any other party successfully intervenes in the OAG Litigation during any stage of the litigation or consent decree time period, or it is procedurally necessary to pursue a motion to enforce. The OAG and the City agree to waive all timeliness objections if the *Campbell* Plaintiffs file a motion for intervention, consolidation, relatedness, reassignment, or joinder under these circumstances.

16. Within 14 days of the effective date of this Agreement, the *Communities United* Plaintiffs and the City agree to file a joint motion with the Court in *Communities United v. City of Chicago*, Case No. 17-cv-7151, seeking to stay that litigation. The *Communities United* Plaintiffs further agree that they will not file any motion for intervention, consolidation, relatedness, reassignment, or joinder in the OAG Litigation unless any other party successfully intervenes in the OAG Litigation during any stage of the litigation or consent decree time period, or it is procedurally necessary to pursue a motion to enforce. The OAG and the City agree to waive all timeliness objections if the *Communities United* Plaintiffs file a motion for intervention, consolidation, relatedness, reassignment, or joinder under these circumstances.

17. In the event the City or the OAG materially breaches this MOA, the Coalition Founders shall be entitled to move to vacate the stays in their cases and may file a motion for intervention, consolidation, relatedness, reassignment, or joinder with the OAG Litigation. In the event the Coalition objects to the proposed consent decree filed with the Court, the Coalition Founders shall be entitled to move to vacate the stays in their cases. The City and the OAG agree to waive all timeliness objections to the *Campbell* or *Communities United* Plaintiffs' motions for intervention, consolidation, relatedness, reassignment, or joinder under these

6

circumstances. The City and the OAG retain their rights to object to any such motion on any other basis. The City further agrees it will not object to the Coalition Founders' requesting to vacate stays in their respective lawsuits, and agrees that the status of the individual damages cases shall not be a basis for staying the injunctive claims in the *Campbell* case.

18. If a proposed consent decree is not filed with the Court before September 1, 2018, or entered by the Court before January 1, 2019, then the Coalition Founders shall be entitled to move to vacate any stay in their cases. Notwithstanding this provision, the Coalition Founders shall not move to vacate a stay if the City and the OAG demonstrate to the Coalition, through ongoing communication regarding the consent decree development process and the discussion regarding draft consent decree provisions as contemplated in Paragraph 3 of this MOA, that the City and the OAG are working in good faith to file with the Court, in 2018, a consent decree containing provisions designed to reduce the likelihood that encounters between police and African American and Latino residents and persons with disabilities will result in the use of unnecessary or excessive force.

19. The effective date of this MOA is the date of the last signature below.

20. Nothing in this MOA shall be interpreted as a waiver of the Parties' rights to seek breach of contract remedies in the court of appropriate jurisdiction, including specific enforcement.

21. This MOA constitutes the entire agreement between the Parties on the matters raised herein, and no other statement or promise, either written or oral, made by any party or agents of any party regarding the matters raised herein that is not contained or referred to in this MOA shall be enforceable. The Coalition and the Coalition Founders are not entitled to any additional rights or claims on the matters raised herein beyond those expressly stated in this

MOA. The City and the OAG bear no additional burdens or obligations on the matters raised herein beyond those expressly stated in this MOA.

By signing this MOA, each party represents it is fully authorized to enter into this MOA and accepts the terms, responsibilities, obligations and limitations of this MOA.

For the Office of the Illinois Attorney General:

By: *[signature]*

Karyn L. Bass Ehler
Chief, Civil Rights Bureau
Office of the Illinois Attorney General
100 West Randolph Street, 12th Floor
Chicago, Illinois 60601

Dated: 3-20-18

For the City of Chicago:

*[signature]*

Allan T. Slagel
Taft Stettinius & Hollister LLP
111 E. Wacker Drive, Suite 2800
Chicago, Illinois 60601

Dated: 3-16-18

For *Campbell v. City of Chicago* Plaintiffs:

*[signature]*

Craig B. Futterman
Clinical Professor of Law
University of Chicago Law School
Mandel Legal Aid Clinic
6020 S. University Street
Chicago, IL 60637

Dated: 3-16-18

*[signature]*

Sheila A. Bedi
Clinical Associate Professor of Law
Northwestern Pritzker School of Law
Bluhm Legal Clinic
MacArthur Justice Center
375 E. Chicago Ave. 8th Floor
Chicago 60611

Dated: 3-16-18

For *Communities United v. City of Chicago* Plaintiffs:

*[signature]* 3/16/2018

Karen A. Sheley
Roger Baldwin Foundation of ACLU, Inc.

8

150 N. Michigan Avenue, Suite 600
Chicago, IL 60601

Dated: _____

Case: 1:17-cv-07151 Document #: 76-1 Filed: 05/17/19 Page 15 of 15 PageID #:1586